May it please the Court, my name is Stanley Friedman, I'm the attorney for the appellant and the defendant, Shirley Ann Jackson. With the Court's permission, I'd like to reserve two minutes, if I may, for rebuttal. You may do so, but watch the clock. Sometimes our questions take you beyond. Yes, Your Honor, thank you. I'd like to start off, obviously, with the Court's order that it issued on Friday regarding the application of the case of United States v. Combs, and I'd like to ask the Court to review the facts of this case. The holding of Combs It's been the position of Shirley Jackson that the remand from the second appeal in this case was not a limited remand. But the holding of Combs was not an amyline remand? Correct, Your Honor. I thought it said so. Yes, Your Honor. And the reason why Jackson holds that is that was actually the subject of the second appeal related to the Court's declaration that the United States sentencing guidelines were unconstitutional. The sentencing in this case actually occurred approximately six weeks before the sentencing in the case. Blakely was issued, perhaps I should address that first. Blakely was issued on July 14th, 2004. I'm sorry. Shirley Jackson was sentenced on July 14th, 2004. Blakely was sentenced on July 14th, 2004. Blakely was issued by the Supreme Court on June 24th, 2004. And then on July 7th, on behalf of Ms. Jackson, I filed an objection in the district court. That's part of the Appellant's Excerpt of Record 119, objecting to anything over the base offense level of six. Hold on. I'm confused about something you said earlier, and I'm behind where you're speaking. I'm looking, I think I'm looking at the critical decision of the Memo Dispo that we filed September 22, 2005. Yes, Your Honor. At 161 of the excerpts. Yes, Your Honor. And it says, we remand the sentence for further proceedings consistent with the United States v. Ameline. Yes, Your Honor. That's language that our court uses very precisely. We don't vacate. We remand, but we don't vacate. The idea is, the district judge will say whether he would have sentenced differently had he known that the sentencing guidelines were not mandatory. Yes, Your Honor. He invites the lawyers to file briefs saying why he should say one thing or the other. But it's not a resentencing. I think Ameline made that very clear, the case that's to be brought back from Butner, South Carolina, wherever they may be, for resentencing unless the judge says, yeah, I would have done it differently. I want to do it again. It strikes me that your whole argument proceeds on the assumption that that's not so, that this second argument vacated the sentence. If it didn't vacate the sentence, the sentence was still in force, and it was too late for a motion to vacate the plea. What am I missing here? Your Honor, there are Ninth Circuit cases that talk about the actual language that would be used here in terms of an unpreserved error. So, for example, the Ninth Circuit case called Bang-Salazar, which was issued in July of 2001. Are you talking about plain error cases? And what the language should be in plain error cases. Yes, Your Honor. This is an Ameline remand. I can go with you on plain error. I think it was quite possibly plain error for the district judge not to tell the defendant, you're going to be hit with a restitution order. Yes, Your Honor. And I think maybe it was plain error for it not to get the defendant to more clearly accept a substantial basis in fact for the plea. Yes, Your Honor. I'm willing for purposes of discussion to go with you on both those things, but it seems to me they'd have to be raised on the first appeal, not the third appeal, after a remand that didn't vacate the sentence. They just can't be raised. So the cases that say how it's plain error and it can be raised without objection have no bearing. That's what I'm getting at, and that's where I want your help. Yes, Your Honor. Respectfully, Your Honor, there's a case that came out in February of 2006 last year, United States v. Ajage. It was February 22nd. In that case, we had the same district court judge, Judge Cooper, and we had the same defense lawyer, me. Is that a case we know about? It's a reported case, Your Honor. I think it's in my opening brief. Okay. And what's the name of it again? Ajage, H-A-G-E-G-E, Your Honor. And in that case, I made the same arguments. In fact, in some respects, my briefing were cut and paste from one from the other. And in that case, the Ninth Circuit held that the Sixth Amendment error had been preserved, and in the Bank Salazar case, the Ninth Circuit also held that in Ajage, the error had been preserved. In fact, that was the whole subject of my objection pre-sentencing in this case. Well, the plain error gets you around any failure to preserve the error at the time of the initial sentencing. Yes, Your Honor. My question focuses not on the sentencing and on whether the error is preserved or plain, but on whether it is waived and the district judge has no further jurisdiction to correct it after an appeal has been taken without identifying that error. Yes, Your Honor. In that, Your Honor, then I would hang my hat on this case called U.S. v. Combs, which was the subject of the Ninth Circuit. Before you leave that, I look at that passage that you quoted on page 27, and it clearly is inapplicable because it says accordingly we will vacate the sentence. In ameline remand, we don't vacate the sentence, as you heard from Judge Kleinfeld. Are you referring to the Ajage opinion or the other? I'm looking at the passage that you cited on page 27 of your brief. It says, accordingly, this is in the Ajage opinion, we will vacate the sentence and remand for resentencing in light of Booker. Now, that's not an ameline remand. There is a reference to ameline, but it's not an ameline remand. And I don't know why the language is different. What I'm supposing, but I don't know for sure, is that the order in this case occurred on September 22, 2005, which preceded Ajage and the cases that I found within the Ninth Circuit that talk about what the language should be on a remand, the ones that I have located have been after September 22, 2005. But, Mr. Friedman, both the district court's order and the order that was referred to by Judge Kleinfeld made it clear that what the district court did in this instance was to have an ameline, or ameline, however you want to say it, limited hearing. Is that not correct? I would not agree with that, Your Honor. Based on the language of the order. So you think it's just careless language. Sometimes we say remand, sometimes vacating remand, and we mean the same thing. Well, it's either that or it's silent, Your Honor. Because, for example, it doesn't call it an ameline remand, but it does refer to ameline. But ameline talks about both limited and full remands. And put note one of ameline. But, for example, the court's order says, Order declining request to resentence defendant following remand pursuant to ameline. And it goes through and it talks about the history of the case. And it quotes on page 2 at lines 8 through 11, referring to this case, Defendant again appealed her sentence and the Ninth Circuit issued the following brief order, We remand the sentence for further proceedings consistent with United States v. Ameline. And then the site remanded. And it was an en banc hearing. I find it really hard to understand how you can sit here and argue that what the district, first of all, you're saying that the Ninth Circuit doesn't know what it's writing, and then you're saying that the district court doesn't know what it's writing. It's an ameline hearing. You may argue there's something in addition to that, but at the very least it's an ameline hearing, is it not? Yes, it is. But I think the issue is whether the sentencing error was preserved or not. Okay, that's another matter. That's another matter because you originally started out by saying that this is not an ameline remand. I'm sorry, Your Honor. So we're in agreement on that now. It is an ameline. Yes, Your Honor. So you're saying that notwithstanding ameline, you are arguing that notwithstanding what Judge Kleinfeld said, that there is a separate ability to continue to argue something that was not raised in previous appeals or raised at the last time with the district court. Is that correct? Because I think the district court regains full jurisdiction over the case. It's not a limited remand. It perhaps is an ameline remand, but it's not a limited. But by definition it's a limited remand if it's an ameline remand, is it not? I don't believe so. I think the issue is whether the error was preserved or not. I think you may be using the word remand differently from the way we've been using it. I'm sorry, Your Honor. In ameline, we were careful to distinguish sending it back to the district court for resentencing from sending it back to the district court for the judge to decide whether there ought to be a resentencing. I think you're treating them as the same, but we carefully treated them as different in significant part because of the administrative difficulties of resentencing all those cases and the usual lack of necessity to do so. All remand means is our file goes back to the district court, the clerk puts it in the mail, and then the district court is allowed to work on the file again. As for what work the district court is allowed to do, that depends on the terms of the remand. Am I correct that you're interpreting remand to mean the district court has the case and can do whatever it wants with it? In this particular case, yes, Your Honor. Counsel, you were about to say something about Combs. Your time has expired, but you were about to say something about Combs, and I guess I should presage that by simply asking you, doesn't Combs foreclose that argument? No, Your Honor, because the language in Combs actually carves out an exception that would apply to this case. But how can you get around this language? A limited Ameline remand, and then Judge Kaczynski in his own style adds a term Ameline uses no fewer than 25 times in that opinion, does not contemplate that the district judge will engage in a full post-Booker resentencing unless he first determines that the sentence would have been materially different under the advisory guideline system. And, of course, the district judge did not make such a finding in this case. Correct, Your Honor. But later in the opinion, there's a quote that says, the limited remand procedure left no room for the district court judge to consider new objections to the original sentence- objections defendant could have raised the first time around. The first time around. That's the key passage, the first time around. Yes, Your Honor. And here, the case of United States v. Adams didn't exist until after the second appeal in the case. What does it matter? You still could have advised us on the first appeal. My client got sentenced without an adequate basis in fact and without being told she was subject to restitution. Well, at the time of the first sentencing, for example, it wasn't required in the circuit to advise somebody of the mandatory nature of a fine. And the court failed to do that. That's new circuit law. And in this case, the court failed to advise about the mandatory nature of the supervised release. And that's new law in the circuit. And then additionally, obviously, the court didn't mention anything about- Not as far from a watershed as you can get. It was just a pretty obvious application of the judge's duties at sentencing. Well, there was a very- Yeah, obviously, Your Honor, there was a very vigorous dissent in the case. And I would point that out as evidence that there was new law within the circuit. It also changed the standard in terms of the restitution. It made a failure to advise of the restitution. It was considered to be plain. And the court's error- In the Adams case, what it said was the court's error was plain and affected Mr. Adams' substantial right to enter a knowing, voluntary, and intelligent plea. So it changed the standard in terms of evaluation of the failure to advise of restitution. Thank you, counsel. Your time has more than expired. Yes, Your Honor. Thank you so much. And thanks for the court's indulgence. Thank you so much. You're very welcome. We'll hear from the government. Thank you, Your Honors. May it please the Court. Elena Duarte, representing the United States, in this matter. If I may start right where the Court left off, the government agrees with the Court's observation that the Combs decision effectively forecloses defendant's argument. It was a limited amyline remand, and the Combs decision makes clear that on appeal from a limited amyline remand, the question is, and the review is for reasonableness, and the reasonableness at this point that we're talking about is whether the district court properly understood the full scope of its discretion in a post-Booker world. Now, when you're talking about the reasonableness of the decision, that the judge would not have sentenced differently, or are you talking about the reasonableness of the sentence? The reasonableness of the district court's decision that had the guidelines been advisory, it would have sentenced no differently. And this particular district court, Your Honors, as the record shows, this particular district court actually allowed a great deal of input from defense, far more than Montgomery actually clarified as required. As the record shows, defendant submitted plenty of additional briefing, including a motion to withdraw her guilty plea five years after it was taken for the first time, and then also argued extensively. It was only after all that that the district court took the matter under submission and then issued her decision. But where did you get the notion that we even apply a reasonableness standard of review on an ameline, post-ameline remand? I mean, I don't mean post-remand. I thought that I read that in Combs, Your Honor, and to the extent that the court does not. Well, here's what I read in Combs. This limited remand, this is the very last paragraph of the opinion, gave the district judge no authority to resentence the defendant unless he first answered the question posed to him in the affirmative. Once the judge answered the question in the negative, his task was complete. That's it. That's absolutely. I mean, there's nothing to review at that point. That's absolutely correct, Your Honor. I think that earlier it does discuss that if it was the district court, in some way if there was a question about the district court's understanding of its discretion. And I think in Combs, actually, the reason it came up, Your Honor, was because, and the dissent speaks to this, it was possible that the district court's language in Combs was arguably somewhat ambiguous. I think it spoke in the passive voice. It said something to the effect of, you know, it's understood that the court may have discretion. I forget the exact quote, and I don't want to use my time quoting it. But in this particular case, this district court made it clear that it understood its discretion. It declined to exercise it. It understood that it had the opportunity to choose a new sentence. And weighing everything that was input, it chose not to. And I completely agree, Your Honor, because of that, that kicks us clearly to that last quote that you just read, where we are in this procedural posture. The district court did everything right. And under Combs, it is evident that that's the end of the inquiry. Well, now, counsel makes a somewhat appealing argument that there's an unfairness here because Adams, he never had an opportunity to invoke the Adams provision, which would if it had been preserved or if Adams had been on the books and he knew about it on the first appeal, he probably would have prevailed. At least he would have gotten a remand for resentencing. Respectfully, first of all, if I could break that apart just a little bit, I'm not going to dispute the Court's opinion that the argument is compelling. I do note that in our response, we've obviously argued that substantive portion of the briefing as well. And we've explained why we feel that mandatory restitution, there's no authority to equate that to the mandatory fine. Adams does not even do that. There is authority that any error in imposing restitution after it was not advised is harmless when the fine was advised, which in this case it was, and the restitution didn't exceed the fine. But beyond that, the Court has also pointed out, and I believe the government did in its briefing, that this, a lot of the issues, and those two issues in particular and others, that defendant has been raising anew as this litigation proceeded in district court at every new step, were very obvious, and he was able to raise them earlier and he did not. Even prior to Adams? Yes, sir. Because in the pre-sentence report, it talked about the fact that restitution was mandatory. And in Rule 11, it does discuss the need to advise a defendant of restitution. So we would certainly argue, if we were at that procedural posture, and I believe I addressed it in my brief, we would certainly be arguing, and that's why I don't want to concede that there even was error at that point, because we would certainly be arguing and I think we would certainly have the authority to make the argument that even then, his argument wouldn't prevail, that that point wouldn't prevail. In other words, Adams is not necessarily a new rule? That's correct, yes. That's definitely our position, Your Honor. But beyond that, at this procedural posture, what defendant, and quite artfully, if I might say, Your Honor, I think in a very talented manner, what was argued at the district court and what is again being argued in these briefs and before this Court, is that the defendant very badly wishes to put himself in the procedural posture that he was in prior to this case's last trip up to the Court where a limited amyline remand was issued and then we went back down. He is not in this posture that he argues. And there is no authority to put him back in that posture. And what posture we're in, as the Court pointed out, I believe, at the beginning of the defense argument, is we are here after what was clearly a limited amyline remand. And the government has argued that the Court should not hear certain claims, but we've fully briefed all the claims and we're not going to argue that there was no way for him to bring those claims in front of the district court. But he brought them. The district court considered them. The district court knew that it was a limited amyline remand, knew what it could and couldn't do, and made that decision. And now we're back in front of the Court and I think I actually would argue in the briefs argue that it was clear prior to Combs, but particularly after Combs. We argue that at this point in this procedural posture the Court's determination of reasonableness and of the fact that once the district court made its reasonable decision that it had no authority, excuse me, that it chose not to resentence, that's where we are. Counsel, there are some arguments that you make that my own preference is not to reach. Let me tell you how I lay this out in my own mind and you tell me if I've got it right. Yes, sir. In particular, I may have it factually wrong because the lawyers on both sides know the case much better than I do. The way I look at it, the whole problem that the appellant has is that it's his third trip to the Ninth Circuit. Other than that, he's got a great case. Rule 11 says the district judge before sentencing him has to tell him of the Court's authority to order restitution and before entering judgment the Court has to determine that there's a factual basis for the plea. It looks to me as though the district court dropped the ball on B1K, the order to order restitution, the authority to order restitution and was kind of shaky on M or not M subsection 3, the factual basis because of the way the defendant kept sliding around during the colloquy. Had this been the first appeal, I'd be inclined to reverse and I don't need Adams or anything else to reverse because it's open and shut in the rule. His problem is he didn't raise those in his first appeal. At least I assume he didn't. I haven't actually read the briefs from the first appeal. You have. So all we have to do is say he didn't raise them in the first appeal case got sent back on this trip with a remand but no vacation so the judgment was not vacated and that's the end of it. Have I got the facts right and the logic right? Briefly, Your Honor, I don't think it's quite right and let me just explain where. First of all, very respectfully as the Court I'm sure knows from the briefing we would disagree with the Court's initial assessment that in and of itself the early what the Court characterizes as errors were sufficient for reversal. That's why I said I didn't want to go with you all the way. Okay, let me get I understand that and I appreciate that. Let me get beyond that. Let's assume for purposes of discussion that those were errors and that they were plain errors. For purposes of discussion, Your Honor. Very well. The appeal, the first appeal and this is in the government's papers so I hope I get this memory right, but the first appeal was based on the fact that the District Court was somewhat ambiguous at sentencing as to whether or not it had considered matters that occurred in the trial of the co-defendants and that was reversed for an assessment of that. Then, and I think this is. It was vacated for new sentencing, wasn't it? On that first trip? I believe it was. In order for the District Court to have in fact considered things outside the record. I apologize. I just don't remember the exact terminology. You're supposed to know the case better than me because. I know. But let me keep going, Your Honor because I think this is where we missed something. At that point, the new sentence the judge imposed after a new PSR and everything was identical. However, at the imposition of this second sentence, it happened to be oh no I have all this outlined if I could just have one second At the time of the second sentence, we happen to be post-Blakely pre-Booker and pre-Amyline and that was when the court followed the directive of the Ninth Circuit but gave two identical sentences, one with guidelines, one without. Then at that point, when defendant appealed, he first raised those issues that the and then it came up and the Ninth Circuit remanded for a limited remand. So he didn't raise the colloquy and the telling of me that the court would impose restitution in the first appeal but he did in the second? Is that what you're telling me? I'm sorry, Your Honor. I believe he did not in the second. He only raised the loss issues in the sentence. Tell me for sure if you can because it matters to me. I understand that, Your Honor. If I could just have one second. I know that it's in the briefing, Your Honor, and I apologize. It's just not at the top of my head right now. Your Honor, I apologize, Your Honor. To the best of my recollection, when the second one came up and was met by a limited Ammaline remand, restitution was not raised. And that is the best of my recollection. And to the extent that I'm unable to answer that, I really apologize, Your Honor. Can I just ask one other question? So is it the government's position that regardless of the nature of the remand, be it Ammaline or something else, it's your position that we should not be considering the issue of restitution and the other points raised by the appellant's argument? It is the government's position that the Court should not consider it. However, in the event that the Court does consider it, we have fully briefed the substantive issues. Thank you. Thank you, Counsel. The case just argued will be submitted for decision and we will now hear argument in United States v. Gillis and Brittingham.
judges: O'scannlain, Kleinfeld, Smtih